IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOANNA CASTRO, *PLAINTIFF* | § § § | |
| V. | § § | CIVIL NO. 5:18-CV-00312-DAE |
| ALBERT SALINAS, *DEFENDANT* | § § § | |

**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION FOR REPLY UNDER RULE 7(a)**

TO THE HONORABLE U.S. DISTRICT COURT:

DEFENDANT files this Motion To Dismiss as authorized by the Federal Rules of Civil Procedure 12(b)(6) or, alternatively, to require a Reply sufficient to meet federal pleading standards under Rule 7(a). Defendant respectfully submits the following:

## I.
### Nature of the Lawsuit/Factual Allegations

1.   Plaintiff JOANNA CASTRO (hereinafter "Castro" and/or "Plaintiff") filed an Original Complaint (Dkt. 2) on April 6, 2018, in which she brings this civil rights action against Albert Salinas (hereinafter "Salinas" and/or "Defendant Salinas") asserting violations of 42 U.S.C. § 1983 and § 1988 and the United States Constitution.

2.   Plaintiff claims Defendant Salinas intentionally violated her First Amendment right by retaliating against her for filming police officers and filing a false misdemeanor charge against her. She also pleads a violation of the Fourth Amendment for Defendant's use of excessive force. Dkt. 1 ¶¶ 17-19.  Plaintiff avers that Defendant acted under color of law. *Id*. at ¶ 3.  She also pleads the presence of six (6) individuals behind her at the time of the incident.  *Id*. at ¶ 7.

## II.
## Additional Facts

3.      Defendant offers additional facts and evidence in support of his motion to dismiss and assertion of qualified immunity:

      a.      The Affidavit of Colleen Ferruzzi, Dispatch Supervisor for the City of Alamo Heights[1] **(Exhibit A)** verifies two (2) audio recordings in which Aamir Khan, store manager for a Shell station located at 4302 McCullough Avenue, Olmos Park, Texas, makes 911 calls to the City of Olmos Park with regard to Todd Ferguson and Jack Miller entering his store open carrying firearms in his store.  Ferguson and Miller enter his store at different times, Ferguson first and then Miller, and argue with him about the sign posted on the door prohibiting firearms being open carried in the store.   Miller did not leave the store until Olmos Park Police were dispatched to the scene.

      b.      The Affidavit of Alejandro Salinas, Police Officer for the City of Olmos Park **(Exhibit B)** verifies incident reports under Case Numbers 18-01784 and 18-1785 regarding incidents occurring at the Shell station with Jack Miller and later that evening, with Plaintiff Joanna Castro.[2]  Also attached is a video recording taken with Officer Salinas' body camera that evening.

      c.      The Affidavit of Rene Valenciano, Chief of Police for the City of Olmos Park **(Exhibit C)** verifies video recordings of the Shell station taken on February 20, 2018; incident reports authored by Officer Brandon Schumacher, and Investigator Hector Ruiz; Warrant No. 047202 for Plaintiff Joanna Castro; and witness statement of Aamir Khan, Shell station manager regarding the events of that evening.

---

[1] After the City of Olmos Park's regular business hours of 8:30 a.m. to 5:00 p.m., emergency and non-emergency calls are forwarded to the dispatchers of the City of Alamo Heights for handling and to initiate response.
[2] A witness, who is a private citizen, requested that OPPD maintain confidentiality of her information; therefore, the witness' information has been redacted from the incident reports attached to Exhibit B (Salinas Affidavit) and Exhibit C (Valenciano Affidavit).

  d.  The Affidavit of Diane Gonzales, City Secretary for the City of Olmos Park **(Exhibit D)**, verifies the City's Ordinance under section 24-211 entitled, "Being in or about a public or private building in the nighttime."

### III.
### Arguments and Authorities

**A.**  **Standard for 12(b)(6) Motion**

4.  If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law FED R. CIV. P 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 44, 556 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Rather, the court must be sure that the complaint alleges sufficient facts to move the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. When considering a motion to dismiss under Rule 12(b)(6) the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007)(quoting *In re Katerina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

5.  Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See, Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp.2d 734, 737-38 (S.D. Tex. 1998). While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, a plaintiff's "obligation to provide the 'grounds' of his

'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993); see also *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 313 (5th Cir. 2002). As explained herein, Plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id; Nationwide BiWeekly Admin. Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).

6.  When ruling on a rule 12 (b)(6) motion, courts generally examine only the contents of the pleadings and any attachments thereto. *Brand Coupon Network, LLC v. Catalina Mkting Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). However, they may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiffs claims. *Id*.

**B.  Qualified Immunity and Heightened Pleading Standard**

7.  Qualified immunity protects public officers from suit if their conduct does not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." *Bishop v. Arcuri,* 674 F.3d 456, 460 (5th Cir. 2012) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Defendant invokes his qualified immunity from Plaintiff's claims. Once the qualified immunity defense is raised, the plaintiff possesses the burden of showing that the facts alleged demonstrate that the officer violated a constitutional right, and that the right was clearly established at the time of the violation. *Pearson v. Callahan,* 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (discussing the modified inquiry under *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). This

is a fact-specific inquiry to be made from the perspective of an objectively reasonable officer at the scene, rather than in hindsight. *See Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

8. In *DeLeon v. City of Dallas,* 141 Fed. Appx. 258, 261 (5th Cir. 2005), the Court outlined the standard applicable to the inquiry:

> In response to a qualified immunity defense, "plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to the constitutional violation. *Anderson v. Pasadena Indep. Sch. Dist.,* 184 F.3d 439, 443 (5th Cir. 1999). Distinct from the notice pleading standard embodied in Rule 8, the heightened pleading standard applicable in cases defended on qualified immunity grounds requires a plaintiff to plead with factual detail and particularity, not mere conclusory allegations." *Id.; see also Schultea v. Wood,* 47 F.3d 1427, 1430 (5th Cir. 1995). In the § 1983 context, this standard translates, *inter alia*, into the requirement that the plaintiff "identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Anderson*, 184 F.3d at 443.

**C.    No Clearly Established Right**

9. Plaintiff fails to state a cognizable claim against Defendant Salinas under the Fourth Amendment. Plaintiff avers Defendant Salinas used excessive force and admits she was neither detained nor arrested at that time. *See,* Dkt. 1 ¶ 13. In fact, Defendant Salinas approached Plaintiff and used some force to back Plaintiff away from an investigation scene involving a third party carrying an assault rifle. **Exhibit B4 (Salinas Affidavit); Exhibits C1 and C2 (Valenciano Affidavit).** There clearly was no detention of Plaintiff that evening and her restriction of movement was only toward the scene of the immediate investigation for a brief period of time. *Id.*

10. In *Wilkins v. Gaddy,* 559 U.S. 34, 559 U.S. 34, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010), the Court explained that the "core judicial inquiry" in analyzing an excessive-force claim is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-

faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 1178. Here, the Complaint does not allege an injury sufficient to have constitutional dimension, and it does not explain why it was not—or could not possibly have been perceived by reasonable officers—to be required to pursue and detain him when he fled.

11. The Supreme Court long ago held that "all claims that law enforcement officers have used excessive force - deadly or not - in the course have an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed 2d 443 (1989). As noted in *Graham*, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id* at 396. To state a claim of excessive force under the Fourth Amendment, plaintiff must allege that she suffered an injury that resulted directly and only from the use of force that was excessive to the need, and that the force used was objectively unreasonable. *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011). Additional considerations that may bear on the reasonableness or unreasonableness of the force used include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Holcomb v. McCraw,* 262 F.Supp 3d 437, 447 (W.D. Tex. 2017). Because reasonableness depends on the totality of the circumstances, the Courts must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade harassed by flight." *Graham*, 490 U.S. at 396. Furthermore, the reasonableness inquiry

examines the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

12.     The injury component of a claim exhibits a judicial recognition that not every contact between a citizen and a police officer is sufficient for an excessive force claim. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).  To determine whether an injury is *de minimus* and thus insufficient to satisfy the first element of an excessive force claim, the courts look to the context in which the excessive force was deployed. *Id.*   "The level of injury required to establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances. *Benoit v. Bordelon*, 596 Fed. Appx. 264, 269 (5th Cir. 2015). When the use of force is unnecessary, the extent of injury needed to exceed the *de minimus* level is low. *Id.*

13.     In the case at bar, the evidence, consisting of videos leading up to the confrontation with Miller shows a concerted effort on the part of the Plaintiff and others to create and escalate a disturbance at a nearby place of business, leading to emergency calls for police investigation into an individual (i.e. Miller) carrying an assault rifle.  The police response in the late night, under poorly lighted conditions on the premises where Plaintiff stood, required immediate action to secure the scene to evaluate the level of danger to the public and the responding officers. Plaintiff's close proximity to the individual displaying the assault rifle authorized Defendant Salinas' reaction to assess the presence of danger in the area and the decision to force Plaintiff to back away from the immediate area.  *See, Holcomb*, <u>supra</u>. 262 F.Supp 3d at 488 (forcible arrest of Open Carry activist did not violate Fourth Amendment where heckling onlookers affiliated with arrestee rendered force used by officer objectively reasonable). Although Plaintiff and her colleague, Miller, were evidently in violation of a City ordinance prohibiting their presence on

private property at nighttime without permission, Plaintiff was not arrested that night. **Exhibit D (Gonzales Affidavit).** There was clearly no detention of Plaintiff that evening, and the only force used was the force necessary to push Plaintiff back from what appeared to be a dangerous encounter with an (at that time) unknown individual carrying a deadly weapon. It was objectively reasonable to push Plaintiff back from a clearly dangerous situation. *See, Surratt v. McClaran*, 234 F. Supp. 3d 815, 827 (E.D. Tex. 2016), aff'd sub nom. *Surratt v. McClarin*, 851 F.3d 389 (5th Cir. 2017), *cert. denied sub nom. Surratt v. McClaran*, 138 S. Ct. 147, 199 L. Ed. 2d 37 (2017)("Qualified immunity protects an official 'whose conduct was objectively reasonable, even if the conduct infringed upon a constitutional right of the plaintiff,' and therefore, 'even law enforcement officials who reasonably but mistakenly use excessive force are entitled to immunity.'" *Wagner*, 227 F.3d 316, 321 (5th Cir. 2000), *quoting Gutierrez v. Walters*, 139 F.3d 441, 445–47 (5th Cir. 1998)). Plaintiff's movement was only temporarily restricted to push her away from the scene of the investigation/danger.

**D.   No First Amendment Retaliatory Arrest Where Officers Had Probable Cause**

14.   The First Amendment prohibits government officials from subjecting an individual to retaliatory prosecution for engaging in protected speech. *Crawford-El v. Britton,* 523 U.S. 574, 592, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Nonetheless, the Supreme Court's decision in *Hartman v. Moore,* held that a plaintiff who sued law enforcement officers claiming he was prosecuted because of his protected speech had to allege and prove the absence of probable cause as part of his claim. *Hartman v. Moore,* 126 S.Ct. 1695 (2006). As previously stated, Defendant had probable cause for Plaintiff's arrest; therefore, no liability for retaliatory prosecution can be proved and qualified immunity applies. *See e.g., Mesa v. Prejean,* the Fifth Circuit held that when there is probable cause to arrest, a court must reject plaintiff's argument that the arrestee's

protected speech, "as opposed to her criminal conduct," was the motivation for the arrest, no matter how clearly that speech may be protected by the First Amendment. *Mesa v. Prejean,* 543 F.3d 264, 273 (5th Cir. 2008).

15. Plaintiff alleges her First Amendment rights were violated by causing her to be arrested in retaliation for her filming police activities. Dkt. 1 ¶ 19. To state a retaliation claim under the First Amendment, the plaintiff must allege that (1) they were engaged in the constitutionally protected activity, (2) the defendant's actions caused plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). However not all retaliatory acts are actionable as a violation of the First Amendment. Some are simply "too trivial or minor" notwithstanding any chilling effect. *Id.*

16. To be actionable, there must be an "adverse effect" caused by the retaliatory act. *Bennett v. Hendrix*, 423 F.3d 1247, 1252 (11th Cir. 2005). Regardless of the context, however, the act must "deter a person of ordinary firmness from exercising his or her First Amendment rights." *Id.* This entails a fact intensive inquiry that considers the status of the speaker and retaliator, the relationship between them, and the nature of the alleged retaliatory acts. *Suarez Corp Indus. v. McGrow*, 202 F.3d 676, 686 (4th Circ. 2000). Whether actions of a defendant "caused an injury sufficient to chill the speech of a person of ordinary firmness is a particularly factual analysis that turns on the extent and nature of the injury." *Bailey v. City of Jasper Texas*, 2012 WL 4969126 at *4 (ED Tex. 2012), *recommendation adopted*, 2012 WL 4970809 (ED Tex. 2012).

17. Governmental retaliation against a private citizen for exercise of First Amendment rights can be objectively reasonable when law enforcement officers may have a motive to retaliate but

there is also a ground to charge criminal conduct against the citizen. The objectives of law-enforcement take primacy over the citizen's right to avoid retaliation. *Keenan*, 290 F.3d at 261-262. In those circumstances, qualified immunity largely depends on the existence of probable cause. *Id*. Only if no reasonable place officer could have believed that probable cause exists for the law enforcement action against the plaintiff, then a retaliation violated clearly established law in the circuit. *Id.* at 262. Here, plaintiff was charged with Interference with Duties of a Public Servant. The existence of probable cause is affirmed by the magistrate's review of the charge and the issuance of the arrest warrant. **Exhibit C5 (Valenciano Affidavit).** Therefore, Salinas' actions were objectively reasonable as a matter of law.

### E. Common Law Assault Claim is Barred Under State Law

18. Under Texas law, tort claims brought against any governmental employee based on actions within the scope of his or her employment must be dismissed. Specifically, Texas Civil Practice and Remedies Code §101.106(f) states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

This provision applies to all torts not just to those torts to which the state has waived sovereign immunity. *Franka v. Velasquez,* 332 S.W.3d 361, 381 (Tex. 2011).

19. Plaintiff's claim for common law assault against Defendant Salinas for conduct within the general scope of his employment must be dismissed pursuant to section 101.106(f). Plaintiff cannot proceed with an intentional tort claim against the City of Olmos Park, even if substituted under section 101.106 because the City is immune from such an intentional tort claim. *See* Tex.

Civ. Prac. & Rem. Code §101.057(2) (excluding waiver of immunity for claims "arising out of assault, battery, false imprisonment, or any other intentional tort"). Consequently, Defendant requests the assault claim be dismissed.

**F.     Dismissal of Declaratory Judgment Action**

20.     The Declaratory Judgment Act is an enabling act that confirms discretion on the courts rather than an absolute right on a litigant. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). The act confers on federal courts discretion in deciding whether to declare the rights of litigants. *Id.* at 286. The fact that a Court can enter a declaratory judgment does not mean that it should. *Hewitt v. Helms*, 482 U.S. 755, 762 (1987). The act provides no independent basis for jurisdiction. *Medtronic Inc. v Mirowski Family Ventures L.L.C.*, 134 S.Ct. 843, 848 (2014).

21.     The Fifth Circuit has held that to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, the plaintiff must alleged facts from which it appears that she will suffer injury in the future. *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). In the case at bar, plaintiff does not allege any ongoing injury or any threat of a likely or imminent future injury. Accordingly, defendant seeks dismissal of plaintiff's declaratory judgment action.

**CONCLUSION AND PRAYER**

WHEREFORE, PREMISES CONSIDERED, Defendant Salinas prays the Court grant his Motion to Dismiss and dismiss Plaintiff's claims identified above pursuant to FRCP 12(b)(6). Defendant further requests such other and further relief to which he may show himself to be justly entitled, at law and in equity.

SIGNED this 5th day of June, 2018.

                        Respectfully submitted,

                        DENTON NAVARRO ROCHA BERNAL & ZECH
                        A Professional Corporation
                        2517 N. Main Avenue
                        San Antonio, Texas 78212
                        Telephone:   (210) 227-3243
                        Facsimile:    (210) 225-4481
                        patrick.bernal@rampage-sa.com

BY: _____
            PATRICK C. BERNAL
            State Bar No. 02208750
            COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

    This is to certify that a true and correct copy of the foregoing instrument has been served in accordance with the Texas Rules of Civil Procedure on this 5th day of June, 2018, to the following:

| | |
|---|---|
| Millie L. Thompson | **E-NOTIFICATION** |
| Law Office of Millie L. Thompson | **& CMRRR #9171 9690 0935 0092 1789 12** |
| 1411 West Ave., Ste. 100 | |
| Austin, Texas 78701 | |

_____
PATRICK C. BERNAL

F:\Castro, J v Salinas TML (45233)\Pleadings\Drafts\Defs 12b MTD 2018 0605.docx