**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JOANNA CASTRO,** | § | |
| *PLAINTIFF* | § | |
| | § | |
| **V.** | § | **CIVIL NO. 5:18-CV-00312-DAE** |
| | § | |
| **ALBERT SALINAS,** | § | |
| *DEFENDANT* | § | |

**DEFENDANT'S 12 (b)(6) MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE U.S. DISTRICT COURT:

DEFENDANT files this Motion to Dismiss Plaintiff's First Amended Complaint as authorized by the Federal Rules of Civil Procedure 12(b)(6). Defendant respectfully submits the following:

**I.**
**Nature of the Lawsuit/Factual Allegations**

1.     Plaintiff JOANNA CASTRO (hereinafter "Castro" and/or "Plaintiff") filed an Original Complaint (Dkt. 1) on April 6, 2018, in which she brings this civil rights action against Albert Salinas (hereinafter "Salinas" and/or "Defendant Salinas") asserting violations of 42 U.S.C. § 1983 and § 1988 and the United States Constitution.   On June 5, 2018, Defendant filed its 12 (b) (6) Motion to Dismiss or in the Alternative, Motion for Reply under Rule 7(a) (Dkt. 3).

2.     As an alternative to filing a Response to Defendant's Motion to Dismiss, Plaintiff has elected to file her First Amended Complaint in response to Defendant's Motion for Reply under Rule (7) (a).   (Dkt. 4).

3.     Plaintiff alleges that Defendant Salinas intentionally violated her First Amendment right

by retaliating against her for filming police officers that caused her to be arrested.   Plaintiff also pleads a violation of the Fourth Amendment for Defendant's use of excessive force. (Dkt. 4 ¶¶ 17-19).   Plaintiff avers that Defendant acted under color of law. (*Id.* at ¶ 3).   Notwithstanding Plaintiff's First Amended Complaint, Plaintiff's claims against Defendant Salinas remain unsupported by the facts and fail to state a claim for First, Fourth, and Fourteenth Amendment violations upon which relief can be granted; and Plaintiff fails to state a claim for declaratory relief.

## II.
## Additional Facts

4.    Defendant offers the following facts and evidence in support of his 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint and asserts qualified immunity:

a.    The Affidavit of Colleen Ferruzzi, Dispatch Supervisor for the City of Alamo Heights[1] **(Exhibit A)** verifies two (2) audio recordings in which Aamir Khan, store manager for a Shell station located at 4302 McCullough Avenue, Olmos Park, Texas, makes 911 calls on February 20, 2018, at approximately 7:52 p.m. to the City of Olmos Park with regard to Todd Ferguson and Jack Miller entering his store open carrying firearms in his store.   Ferguson and Miller enter his store at different times, Ferguson first and then Miller, and argued with Mr. Khan about the sign posted on the door prohibiting firearms being open carried in the store.   Miller did not leave the store until Olmos Park Police were dispatched to the scene.[2]   **Exhibit B1 (Salinas Affidavit).**

b.    The Affidavit of Defendant, Alejandro Salinas, Police Officer for the City of Olmos Park verifies incident reports under Case Number 18-01784 regarding the first incident occurring at the Shell station with Jack Miller. Officer Salinas also verifies incident reports under Case

---

1 After the City of Olmos Park's regular business hours of 8:30 a.m. to 5:00 p.m., emergency and non-emergency calls are forwarded to the dispatchers of the City of Alamo Heights for handling and to initiate response.
2  Also referred to as the "first incident".

Number 18-1785 concerning a second incident later that evening, involving Jack Miller and Plaintiff Joanna Castro.[3] **Exhibit B, B1-B5 (Salinas Affidavit).**

c.      The second incident occurred at approximately 9:11 p.m. when Defendant, Officer Salinas, and Officer Schumacher responded to a call of a man with a rifle on McCullough Avenue across from the Shell Station.   The man was identified as Jack Miller who was carrying a rifle slung around his back and later determined to have a loaded handgun.   During the course of Mr. Miller's arrest, Plaintiff interfered with the duties of the officers during the arrest of Mr. Miller. **Exhibit B, B2-B5 (Salinas Affidavit)**[4].   Officer Salinas did not use unreasonable force against Plaintiff. Mr. Miller was arrested in violation of City Ordinance 24-211, which prohibits individual's presence on private property at nighttime without permission.   The Affidavit of Diane Gonzales, City Secretary for the City of Olmos Park verifies the City's Ordinance under section 24-211 entitled, "Being in or about a public or private building in the nighttime."   Plaintiff was not arrested that evening. (Dkt. 4 ¶ 13).   **Exhibit D (Gonzales Affidavit).**   However, a warrant was later issued for Plaintiff's arrest for the February 20, 2018 incident on March 22, 2018. **Exhibit C6 (Valenciano Affidavit).**

d.      The Affidavit of Rene Valenciano, Chief of Police for the City of Olmos Park verifies video recordings of the Shell station taken on February 20, 2018; video recording of Miller's arrest taken later that evening on February 20, 2018; incident reports authored by Officer Brandon Schumacher, and Officer Hector Ruiz; Warrant No. 047202 for Plaintiff Joanna Castro requested by Sergeant Ruiz; and witness statement of Aamir Khan, Shell station manager,

---

3 A witness, who is a private citizen, requested that OPPD maintain confidentiality of her information; therefore, the witness' information has been redacted from the incident reports attached to Exhibit B (Salinas Affidavit) and Exhibit C (Valenciano Affidavit).

4 Exhibit B5 is a video recording taken with Officer Salinas' body camera that evening. (Salinas Affidavit).

regarding the events of that evening.   **Exhibit C, C1-C8 (Valenciano Affidavit).**

e.   Olmos Park Police Sergeant Hector Ruiz arrested Plaintiff for an active warrant and the additional charge of obstruction of passageway/roadway on March 27, 2018, while Plaintiff was allegedly auditing activists openly carrying in the City of Olmos Park.   (Dkt. 4, pg. 6, ¶ l). **Exhibit C8 (Valenciano Affidavit).**

### III.
### Arguments and Authorities

**A.    Standard for 12(b)(6) Motion**

5.    If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law FED. R. CIV. P 12(b)(6).   To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 44, 556 (2007)).   A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 556).   The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*   Rather, the court must be sure that the complaint alleges sufficient facts to move the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. When considering a motion to dismiss under Rule 12(b)(6) the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Sonnier v. State Farm Mut. Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007)(quoting *In re Katerina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

6.    Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.   *Frith v. Guardian Life Ins. Co. of Am.,* 9

F. Supp.2d 734, 737-38 (S.D. Tex. 1998).   While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.   Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993); see also *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 313 (5th Cir. 2002). As explained herein, Plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id.; Nationwide BiWeekly Admin. Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).

7.     When ruling on a rule 12 (b)(6) motion, courts generally examine only the contents of the pleadings and any attachments thereto. *Brand Coupon Network, LLC v. Catalina Mkting Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).   However, they may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiffs claims. *Id.*

**B.     Qualified Immunity and Heightened Pleading Standard**

8.     Qualified immunity protects public officers from suit if their conduct does not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known."   *Bishop v. Arcuri,* 674 F.3d 456, 460 (5th Cir. 2012) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).   Defendant invokes his qualified immunity from Plaintiff's claims. Once the qualified immunity defense is raised, the plaintiff possesses the burden of showing that the facts alleged demonstrate that the officer violated a constitutional right, and that the right was clearly established at the time of the violation.

*Pearson v. Callahan,* 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (discussing the modified inquiry under *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).   This is a fact-specific inquiry to be made from the perspective of an objectively reasonable officer at the scene, rather than in hindsight. *Graham v. Connor,* 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989).

9.      In light of the Supreme Court's decision in *Pearson v. Callahan*, the courts are permitted to consider the question of whether a defendant is entitled to qualified immunity without first determining whether or not the plaintiff's constitutional rights were violated.   *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 821, 172 L. Ed. 2d 565 (2009).   The Court can determine whether the Plaintiff has alleged the violation of a constitutional right.   *Hale v. Townley*, 45 F.2d 914, 917 (5th Cir. 1995).   The Court is to decide if the conduct was objectively reasonable in light of clearly established law at the time.   *Id.*

10.      In *DeLeon v. City of Dallas,* 141 Fed. Appx. 258, 261 (5th Cir. 2005), the Court outlined the standard applicable to the inquiry:

> In response to a qualified immunity defense, "plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to the constitutional violation. *Anderson v. Pasadena Indep. Sch. Dist.,* 184 F.3d 439, 443 (5th Cir. 1999). Distinct from the notice pleading standard embodied in Rule 8, the heightened pleading standard applicable in cases defended on qualified immunity grounds requires a plaintiff to plead with factual detail and particularity, not mere conclusory allegations." *Id.; see also Schultea v. Wood,* 47 F.3d 1427, 1430 (5th Cir. 1995).   In the § 1983 context, this standard translates, *inter alia*, into the requirement that the plaintiff "identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Anderson*, 184 F.3d at 443.

**C.      No Clearly Established Right**

11.     Plaintiff fails to state a cognizable claim against Defendant Salinas under the Fourth Amendment.   The test to determine if the right was clearly established is "whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Saucier* at 202.   Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).   One example, qualified immunity protects Defendant against the allegation that Defendant caused Plaintiff, "to be arrested unreasonably".   (Dkt. 4, ¶16).

12.     Defendant Salinas approached Plaintiff and used reasonable force to back Plaintiff away from interfering in an active arrest at an investigation scene involving a third party carrying an assault rifle.   **Exhibits B2, B3, B4[5], B5 (Salinas Affidavit); Exhibit C4 (Valenciano Affidavit).** In *Wilkins v. Gaddy,* 559 U.S. 34, 559 U.S. 34, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010), the Court explained that the "core judicial inquiry" in analyzing an excessive-force claim is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."   *Id.* at 1178.

13.     The Supreme Court long ago held that "all claims that law enforcement officers have used excessive force - deadly or not - in the course have an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed 2d 443 (1989).   As noted in *Graham*, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396.   To state a claim of excessive force under the Fourth Amendment, plaintiff must allege that she suffered an

_____

5 Exhibit B4 contains a clerical error; mistakenly referencing the incident date as February 10, 2018, instead of February 20, 2018.

injury that resulted directly and only from the use of force that was excessive to the need, and that the force used was objectively unreasonable.   *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011).   Additional considerations that may bear on the reasonableness or unreasonableness of the force used include:   the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.   *Holcomb v. McCraw,* 262 F.Supp 3d 437, 447 (W.D. Tex. 2017).   Because reasonableness depends on the <u>totality</u> of the circumstances, the Courts must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade harassed by flight."   *Graham*, 490 U.S. at 396.   Furthermore, the reasonableness inquiry examines the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*.   An important consideration in the   totality of circumstances in the instant case includes an individual (i.e. Miller) openly displaying an assault rifle in public along with a loaded gun in his possession.

14.   The injury component of a claim exhibits a judicial recognition that not every contact between a citizen and a police officer is sufficient for an excessive force claim.   *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).   To determine whether an injury is *de minimus* and thus insufficient to satisfy the first element of an excessive force claim, the courts look to the context in which the excessive force was deployed. *Id*.   "The level of injury required to establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances. *Benoit v. Bordelon*, 596 Fed. Appx. 264, 269 (5th Cir. 2015).

When the use of force is unnecessary, the extent of injury needed to exceed the *de minimus* level is low. *Id*.

15.     Plaintiff contends that Defendant, in his individual capacity, acted under color of law, to deprived Plaintiff of her Fourteenth Amendment rights under the United States Constitution. (Dkt. 4, p. 1).   It is the Fourth Amendment that provides the standard for evaluation of Plaintiff's alleged excessive force claim and not the Fourteenth Amendment.   *Baker v. McCollan*, 443 U.S. 137, 144, 99 S. Ct. 2689, 2694, 61 L. Ed. 2d 433 (1979).   When the general due process rights guaranteed by the Fourteenth Amendment are congruous with rights guaranteed by another more explicit right, such as the Fourth Amendment's protection against the excessive use of force in an arrest, the more explicit right supercedes "the more generalized notion of substantive due process." *Graham v. Connor,* 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L.Ed.2d 443 (1989).   "[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") *Id* at 395.   Plaintiff cannot repackage a Fourth Amendment claim as a Fourteenth Amendment due process violation.   *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 812-13, 127 L. Ed. 2d 114 (1994).

16.     Plaintiff only makes a blanket claim that Defendant filed a false misdemeanor charge against her, but does not support her accusation by sufficient facts to state a claim for relief.   (Dkt. 4, p.1).

## IV.
## Officer Salinas' Actions Were Objectively Reasonable

17.     Plaintiff has provided insufficient facts to support her claim that Defendant acted

unreasonably.   In the case at bar, the evidence, consisting of videos leading up to the confrontation with Miller shows a concerted effort on the part of the Plaintiff and others to create and escalate a disturbance at a nearby place of business, leading to emergency calls for police investigation into an individual (i.e. Miller) carrying an assault rifle.   The police response in the late night, under poorly lighted conditions on the premises where Plaintiff stood, required immediate action to secure the scene to evaluate the level of danger to the public and the responding officers. Officer Schumacher's dash camera video demonstrates that Plaintiff was approaching Miller during the time Officers Schumacher and Salinas first confronted Miller.   At the far left side of the video, Plaintiff can be seen moving closer to Miller while Officer Schumacher pointed his rifle at Miller and shouted commands to put his hands up and not to reach for his weapon or he will be shot.[6] Although Salinas addressed Plaintiff as "Ma'am" and warned Plaintiff to stay back, Plaintiff continued to get closer to Miller and was putting herself in a position between Officer Salinas and Miller, before Officer Salinas moved her back away from the arrest scene.[7]   Miller himself instructed Plaintiff to get back.[8]

## A.    Interference with the Duties of a Public Servant.

18.    On March 22, 2018, an arrest warrant for Plaintiff was issued by Bexar County Magistrate Judge, Michael Ramos, for Plaintiff's interference with the duties of a public servant on the night of February 20, 2018.[9]   **Exhibit C6 (Valenciano Affidavit).**   Sergeant Ruiz initiated and submitted the affidavit in support of an arrest warrant for Plaintiff.   Defendant did not request nor did he initiate the request, nor did he make the decision to issue an arrest warrant for Joanna Castro.

**Exhibit B (Salinas Affidavit).**   The warrant was supported by Defendant's statement of facts

---

6  Exhibit C3 Video; Time Sequence 9:24:40 - 9:24:49.
7  Exhibit C3 Video; Time Sequence 9:24:50 - 9:25:07.
8  Exhibit C3 Video; Time Sequence 9:25:07 - 9:25:12.
9  The Affidavit within the Arrest Warrant contains a clerical error; mistakenly referencing the incident date as February 10, 2018, instead of February 20, 2018.

incorporated in said warrant as follows:

> (1).   On 02/10/2018 at approximately 7:52pm, Officer A. Salinas #341 arrived at Lin Marche located at 4307 Mc McCullough Ave for a man with a rifle call. He exited the marked patrol vehicle with the departmental AR-15 patrol rifle, because of the nature of this call. He observed a female, whom, during the course of this investigation, was identified as Joanna Castro, "Suspect", with something in her hand. The officer told "Suspect" several times to get back because Officers were dealing with a man with a gun.

> (2).   "Suspect" refused the officers lawful commands while this incident was occurring and as Officer B. Schumacher #324, had Jack Edward Miller at gun point, this was the man with a rifle and hand gun. In order to get "Suspect" out of the vicinity of danger and for her not be interfering with Officer Salinas and Officer B. Schumacher, the officer had to physically guide "Suspect" back a couple of times. The "Suspect" came very close to the side of his handgun that "Suspect" was approximately less than a foot away where "Suspect" could have easily reached over in an attempt to take it.

> (3).   "Suspect" then shoved something towards the officer's face, It appeared small and dark in color, possibly a cell phone. The officer immediately pushed it away from his facial area and it fell down. He later confirmed it was a cell phone. This appeared as if the "Suspect" was intentionally trying to distract the officer: as he was performing his official duties. There was very poor lighting in that area and it could have been a weapon.

> (4).   Officer B. Schumacher then yelled for assistance and he left "Suspect" where she was in order to assist Officer B. Schumacher, who had Jack Edward Miller at gun point.

**Exhibits B, B2, B3, B4, B5 (Salinas Affidavit); Exhibits C3, C6 (Valenciano Affidavit).**

19.   Based on the above-referenced facts, Magistrate Judge Ramos found sufficient probable cause to issue an arrest warrant against Plaintiff.

**B.   In the alternative, Plaintiff's close proximity to the arrest scene was unsafe.**

20.   Plaintiff's close proximity to the individual displaying the assault rifle authorized Defendant Salinas' reaction to approach Plaintiff to assess any presence of danger in the area that would impose an immediate threat to the officers and others, and authorize his decision to force Plaintiff to back away from the vicinity of danger.   *See, Holcomb*, supra. 262 F. Supp. 3d at 488 (forcible arrest of Open Carry activist did not violate Fourth Amendment where heckling onlookers affiliated with arrestee rendered force used by officer objectively reasonable).

21.     The information available to Officer Salinas at the time of the February 20, 2018 incident

is depicted in Officer Salinas' Incident Report #1, Case No. 18-01785 as follows:

> "(2)     Officer B. Schumacher and I then drove to the 4300 block of McCullough Avenue
> in our marked patrol vehicle with caution. (We approached in a tactical manner and with
> greater caution, more so than normal, because there was a mass shooting in a restaurant In
> San Antonio and several persons were injured/killed this weekend and on February 14,
> 2018 less than a week ago over 16 children were killed in Florida with a person with rifle.)"

**Exhibit B2 (Salinas Affidavit)**.   The only force used was the force necessary to drive Plaintiff

back from an arrest in progress of an individual brandishing a deadly weapon in public.

22.      It was objectively reasonable for Officer Salinas to confront the Plaintiff and drive Plaintiff

back from a clearly dangerous situation.  *See, Surratt v. McClaran*, 234 F. Supp. 3d 815, 827 (E.D.

Tex. 2016), aff'd sub nom. *Surratt v. McClarin*, 851 F.3d 389 (5th Cir. 2017), *cert. denied sub*

*nom. Surratt v. McClaran*, 138 S. Ct. 147, 199 L. Ed. 2d 37 (2017)("Qualified immunity protects

an official 'whose conduct was objectively reasonable, even if the conduct infringed upon a

constitutional right of the plaintiff,' and therefore, 'even law enforcement officials who reasonably

but mistakenly use excessive force are entitled to immunity.'"   *Wagner*, 227 F.3d 316, 321 (5th

Cir. 2000), *quoting Gutierrez v. Walters*, 139 F.3d 441, 445–47 (5th Cir. 1998)).  Plaintiff's

movement was only temporarily restricted to direct her away from the scene of the

investigation/danger.   Plaintiff admits she was neither detained nor arrested at that time. (Dkt. 4

¶ 13).   There was clearly no detention of Plaintiff that evening and her restriction of movement

was only toward the scene of the immediate investigation for a brief period of time approximately

less than 30 seconds.   **Exhibit C3 (Valenciano Affidavit)**[10].

**C.     The new factual allegations involving Plaintiff's arrest on March 27, 2018, are not
sufficient to state a claim for relief.**

23.     Plaintiff's First Amended Complaint includes new factual allegations concerning her arrest

---

10  See Time Sequence Footnotes 7-9.

by Sergeant Ruiz on March 27, 2018, for an active warrant when she was again filming activists openly carrying firearms as part of her audit. (Dk. 4, p. 6 ¶¶ l-q).   **Exhibit C8 (Valenciano Affidavit).**   As referenced above, Defendant did not request nor did he initiate the request, nor did he make the decision to issue an arrest warrant for Joanna Castro.   Defendant Salinas did not arrest Plaintiff.   Defendant's only involvement was to transport Plaintiff to the Bexar County Jail in the early morning of March 28, 2018, with Officer Adrian Viera. **Exhibit B (Salinas Affidavit)**. During Plaintiff's transport to the Bexar County Jail, Plaintiff expressed unfounded subjective fear that Defendant was going to attempt to hurt or frame her. (Dkt. 4, pg. 6, ¶¶ o-r).   However, allegations of a subjective "chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.   *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146-47 (2013); *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972).   As such, Plaintiff lacks standing to assert these additional factual allegations against Defendant because Plaintiff only alleges a subjective apprehension, which is produced by fear.   As cited above, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is **plausible** on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 44, 556 (2007)) (Emphasis added). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*   As such, Plaintiff has failed to establish the requisite element of an injury as the result of the alleged use of force on March 27 and early morning of March 28, 2018, and in the absence of an injury, Plaintiff's claim that her Fourth Amendment right to be free from excessive force fails.

## V.
## No First Amendment Retaliatory Arrest Where Officers Had Probable Cause

24.      The First Amendment prohibits government officials from subjecting an individual to

retaliatory prosecution for engaging in protected speech.  *Crawford-El v. Britton,* 523 U.S. 574, 592, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).  Nonetheless, the Supreme Court's decision in *Hartman v. Moore,* held that a plaintiff who sued law enforcement officers claiming he was prosecuted because of his protected speech had to allege and prove the absence of probable cause as part of his claim.  *Hartman v. Moore,* 126 S. Ct. 1695 (2006).  As previously stated above, Defendant had probable cause for Plaintiff's arrest; therefore, no liability for retaliatory prosecution can be proved and qualified immunity applies.  *See e.g., Mesa v. Prejean.*  The Fifth Circuit held that when there is probable cause to arrest, a court must reject plaintiff's argument that the arrestee's protected speech, "as opposed to her criminal conduct," was the motivation for the arrest, no matter how clearly that speech may be protected by the First Amendment.  *Mesa v. Prejean,* 543 F.3d 264, 273 (5th Cir. 2008).

25.     Plaintiff alleges her First Amendment rights were violated by causing her to be arrested in retaliation for her filming police activities.  (Dkt. 4 ¶ 19).  To state a retaliation claim under the First Amendment, the plaintiff must allege that (1) they were engaged in the constitutionally protected activity, (2) the defendant's actions caused plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct.  *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).  However, not all retaliatory acts are actionable as a violation of the First Amendment.   Some are simply "too trivial or minor" notwithstanding any chilling effect. *Id.*

26.     To be actionable, there must be an "adverse effect" caused by the retaliatory act.  *Bennett v. Hendrix*, 423 F.3d 1247, 1252 (11th Cir. 2005).  Regardless of the context, however, the act must "deter a person of ordinary firmness from exercising his or her First Amendment rights." *Id.*

This entails a fact intensive inquiry that considers the status of the speaker and retaliator, the relationship between them, and the nature of the alleged retaliatory acts. *Suarez Corp Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000).   Whether actions of a defendant "caused an injury sufficient to chill the speech of a person of ordinary firmness is a particularly factual analysis that turns on the extent and nature of the injury." *Bailey v. City of Jasper Texas*, No. 1:12-CV-153, 2012 WL 4969126 at *4 (E.D. Tex. Sept. 24, 2012), *recommendation adopted*, No. 1:12-CV-153, 2012 WL 4970809 (E.D. Tex. Oct. 17, 2012).

27.     Governmental retaliation against a private citizen for exercise of First Amendment rights can be objectively reasonable when law enforcement officers may have a motive to retaliate but there is also a ground to charge criminal conduct against the citizen.   The objectives of law-enforcement take primacy over the citizen's right to avoid retaliation. *Keenan*, 290 F.3d at 261-262.   In those circumstances, qualified immunity largely depends on the existence of probable cause. *Id.*   Only if no reasonable police officer could have believed that probable cause exists for the law enforcement action against the plaintiff, then a retaliation violated clearly established law in the circuit. *Id.* at 262.   Here, Plaintiff was charged with Interference with Duties of a Public Servant.   The existence of probable cause is affirmed by the magistrate's review of the charge and the issuance of the arrest warrant. **Exhibit C6 (Valenciano Affidavit).**   Alternatively, Defendant's actions were objectively reasonable in confronting Plaintiff to drive her back from a clearly dangerous situation.   Plaintiff has not provided sufficient factual evidence to show that Defendant acted unreasonably.   Therefore, Salinas' actions were objectively reasonable as a matter of law and he is entitled to qualified immunity.

## VI.
## Common Law Assault Claim is Barred under State Law

28.     Under Texas law, tort claims brought against any governmental employee based on actions

within the scope of his or her employment must be dismissed.   Specifically, Texas Civil Practice and Remedies Code §101.106(f) states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

This provision applies to all torts not just to those torts to which the state has waived sovereign immunity.  *Franka v. Velasquez,* 332 S.W.3d 361, 381 (Tex. 2011).

29.    Plaintiff's claim for common law assault against Defendant Salinas for conduct within the general scope of his employment must be dismissed pursuant to section 101.106(f).   Plaintiff cannot proceed with an intentional tort claim against the City of Olmos Park, even if substituted under section 101.106 because the City is immune from such an intentional tort claim.   *See* Tex. Civ. Prac. & Rem. Code §101.057(2) (excluding waiver of immunity for claims "arising out of assault, battery, false imprisonment, or any other intentional tort").   Consequently, Defendant requests the assault claim be dismissed.

## VII.
## Dismissal of Declaratory Judgment Action is Warranted

30.    The Declaratory Judgment Act is an enabling act that confirms discretion on the courts rather than an absolute right on a litigant. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). The act confers on federal courts discretion in deciding whether to declare the rights of litigants. *Id.* at 286.   The fact that a Court can enter a declaratory judgment does not mean that it should. *Hewitt v. Helms*, 482 U.S. 755, 762 (1987).   The act provides no independent basis for jurisdiction. *Medtronic Inc. v Mirowski Family Ventures L.L.C.*, 134 S.Ct. 843, 848 (2014).

31.    The Fifth Circuit has held that to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, the plaintiff must alleged facts from which it appears that she will suffer injury in the future.   *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003).   In the case at bar, plaintiff does not allege any ongoing injury or any threat of a likely or imminent future injury.   Accordingly, defendant seeks dismissal of plaintiff's declaratory judgment action.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Salinas prays the Court grant his Motion to Dismiss and dismiss Plaintiff's claims identified above pursuant to FRCP 12(b)(6). Defendant further requests such other and further relief to which he may show himself to be justly entitled, at law and in equity.

SIGNED this 2nd day of July, 2018.

Respectfully submitted,

DENTON NAVARRO ROCHA BERNAL & ZECH
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas 78212
Telephone:     (210) 227-3243
Facsimile:     (210) 225-4481
patrick.bernal@rampage-sa.com
adolfo.ruiz@rampage-sa.com

BY:    */s/ Adolfo Ruiz*
       PATRICK C. BERNAL

State Bar No. 02208750
ADOLFO RUIZ
State Bar No. 17385600
COUNSEL FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing instrument has been served in accordance with the Texas Rules of Civil Procedure on this 2nd day of July, 2018, to the following:

| | |
|---|---|
| Millie L. Thompson | **E-NOTIFICATION** |
| Law Office of Millie L. Thompson | **& CMRRR #9171 9690 0935 0187 2282 25** |
| 1411 West Ave., Ste. 100 | |
| Austin, Texas   78701 | |

*/s/ Adolfo Ruiz*
PATRICK C. BERNAL
ADOLFO RUIZ

F:\Castro, J v Salinas TML (45233)\Pleadings\Drafts\Defs 12b MTD P's First Amended Complaint 2018 0702.docx