IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JOANNA CASTRO,
*PLAINTIFF*

V.

Case No. 5:18-CV-312-DAE

ALBERT SALINAS,
*DEFENDANT*

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S FRCP 12(b)(6) MOTION TO DISMISS**

**Introduction**

Plaintiff filed this civil rights lawsuit on April 6, 2018. (Dkt. #1.) This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, and the United States Constitution. The Defendant first responded with a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. #3.) Plaintiff filed her First Amended Complaint within 21 days of service of Defendant's Motion to Dismiss. (Dkt. #4.) Defendant responded with a new Motion to Dismiss. (Dkt. #5.) Defendant has not filed an answer admitting or denying the allegations in Plaintiff's complaint.

**Brief Summary of the Facts**

On February 20, 2018, Plaintiff Castro sought to film the police in Olmos Park, Texas. (Dkt. #4 at 2.) Defendant Salinas intentionally prevented Plaintiff Castro from filming the police by charging at her, unconstitutionally ordering her to put down her camera, and knocking the camera out

1

of her hand. Id. at 3.  While Plaintiff Castro did nothing to interfere with Defendant Police Officer Salinas, was compliant, and obeyed his orders to "get back," Defendant Salinas shoved her with such force that he almost knocked her to the ground and he bruised her. Id. at 4.

Immediately after the encounter, according to Defendant's Motion to Dismiss with exhibits, Defendant Salinas entered a report that Plaintiff Castro **complied** with his orders, omitting the fact that he charged at her, slapped her, and shoved her. (Dkt. #5, Ex. B2.)  Later, likely anticipating this lawsuit, Defendant Salinas entered a different report, minimizing and justifying his physical contact with Castro, and seeking to criminalize Castro with a charge of interfering with him. Id., Ex. B4.  His later report directly contradicted his initial report charactering Castro as compliant. Id.  Plaintiff Castro was arrested because of Defendant Salinas's false report of interference. (Dkt. #4 at 4, 6.) The charge was dismissed for insufficient evidence by the Bexar County District Attorney's Office. Id. at 6.  After this lawsuit was filed, on April 23, 2018, Defendant Salinas looked back at his initial report, which first indicated that Castro complied with his orders, and Salinas changed his story, reporting that the "she complied" language was a mistake on his part. (Dkt. #5, Ex. B3.)

**Summary of the Argument**

A true FRCP 12(b)(6) Motion admits the facts alleged in Plaintiff's Complaint, but challenges Plaintiff's right to recovery on those admitted facts. See Crowe v. Henry, 43 F.3d 198, 203 (5th Cir. 1995).  Defendant's purported 12(b)(6) Motion is a misnamed Motion for Summary Judgment, including affidavits and video exhibits that are not referenced in Plaintiff's live pleading and which substantially contradict Plaintiff's version of the facts. (See Dkt. #5 at 5.)  An FRCP

12(b)(6) Motion to Dismiss should be decided solely on the allegations in Plaintiff's complaint. Speaker v. U.S. Dept. of H&HS Ctrs. For Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010). If the Court decides to consider the material attached to Defendant's Motion, the Motion should be converted to a Motion for Summary Judgment; in which case, Plaintiff needs time to conduct discovery. General Retail Servs., Inc. v. Wireless Toyz Franchise, LLC, 255 F. App'x 775, 783 (5th Cir. 2007). The parties have not had an adequate time for discovery. Defense counsel on June 12, 2018 refused to conference on a docket control order until after the resolution of Defendant's Motion to Dismiss. (Plf. Ex. A.) Plaintiff will be prejudiced if Defendant's exhibits are considered because she has not had an opportunity to depose the defendant or other affiants, gather internal police department communications to conclusively demonstrate the improper motivation for seeking an arrest warrant, gather evidence that the defendant's offense report was substantially changed in anticipation of litigation, and demonstrate that the defendant's body camera video is inaccurate, among other items of prejudice.

Further, Defendant attaches exhibits to his motion that are not admissible. (Dkt. #5, Ex. B2, B, 3, B4, C4, C5, C7, C8.) Materials prepared for litigation purposes are inadmissible hearsay under Federal Rule of Evidence 803(6), and FRE 803(8)(A)(ii) excludes a police officer's recorded statement if made in a criminal case by a police officer. Broadcast Music, Inc. v. Xanthas, Inc., 855 F.2d 233 (5th Cir. 1988); See United States v. Cain, 615 F.2d 380, 382 (5th Cir. 1980). Defendant's Exhibits B2, B3, B4, C4, C5, C6, C7, and C8 are inadmissible statements made by a police officer for a criminal case. Plaintiff hereby objects to those exhibits. Defendant's Exhibit D is also objectionable, as it essentially attempts to provide a legal conclusion by the City Secretary of Olmos

3

Park, claiming to apply the Olmos Park city code to events on February 20, 2018. See FRE 702.

Finally, when reviewing the Plaintiff's well pleaded facts, assuming their truth, this case falls under the Fifth Circuit's First and Fourth Amendment precedent found in Turner v. Lieutenant Driver, 848 F.3d 678 (5th Cir. 2017).  In Turner, the Fifth Circuit held that filming the police in a public place is a First Amendment protected activity: "We agree with every circuit that has ruled on this question: Each has concluded that the First Amendment protects the right to record the police." Id. at 690.  Plaintiff had a clearly established First Amendment protected right to film the defendant police officer, and by yelling at Plaintiff to put down her camera and slapping it out of her hands, Officer Salinas violated that clearly established right. Compare (Dkt. #4 at 3-5) with Turner.  Further, Plaintiff had a clearly established Fourth Amendment right to be free from an arrest made without probable cause. Id. at 693.  Here, like in Turner, arresting a person that did nothing more than film the police is unreasonable, and therefore violates the Fourth Amendment: "Based on the allegations of [Castro's] amended complaint, the officers lacked probable cause to arrest [her]." Id. at 694.

### I.  Defendant Moves for Motion for Summary Judgment, and Plaintiff Needs Time for Discovery.

Defendant cites Brand Coupon for the proposition that the Court may consider his attached exhibits in a FRCP 12(b)(6) Motion. (Dkt. #5 at 5.)  The Fifth Circuit explained that attachments to a 12(b)(6) motion could be considered "because '[n]o party question[ed] the authenticity of these two documents and both were sufficiently referenced in the complain to permit their consideration on a motion to dismiss.'" Collins, 748 F.3d at 637, N.10.  Plaintiff does not cite *any* of Defendant's exhibits in her First Amended Complaint, and her factual allegations conflict with the contents of Defendant's exhibits.

4

For example: Plaintiff alleges in her complaint that as she filmed the police, Defendant Salinas yelled at her to put down her camera and get back. (Dkt. #4 at 3.)  She alleges that she obeyed the order to get back, and backed away from Defendant Salinas repeatedly. (Dkt. #4 at 5.) She alleges that Defendant Salinas slapped the cameras out of her hand, having yelled at her to put the camera down. Id.  He hit her with such force that he hurt her. Id.  Defendant Salinas's sole purpose for engaging Plaintiff Castro was to prevent her from filming, as he was unconcerned with her after he knocked the cameras out of her hands. Id.  These allegations in Plaintiff's First Amended Complaint contradict the objectionable hearsay contained in Defendant Salinas's subsequent offense reports. See (Dkt. #5, Ex. B3.)[1]  Note, too, that Defendant Salinas's offense report statements substantially changed over time.  Immediately after the incident, he reported that Plaintiff Castro complied with his orders to get back. (Dkt. #5, Ex. B2.)  Then, later, he indicated that "the last sentence should have read 'I told her several times to get back and she did not comply.' I instead of reading 'she complied.'" [sic] (Dkt. #5, Ex. B3.)  Nowhere in his report does Defendant Salinas state that he prevented Castro from filming, or that he rammed her with enough force to hurt her. Nowhere in his report does Defendant Salinas report that the other officer told Salinas to leave Castro alone, or "not worry about" Castro. (Dkt. #5, Def. Ex. C3 at time 9:24:40-9:25:00.)

Later, to justify the Texas Penal Code §38.15(b) charge against Castro, Defendant Salinas

---

[1] Please note that Officer Salinas swears in his Affidavit in Defendant's Exhibit B that he is attaching true and accurate copies of his reports, but he does not swear to the actual contents of – the statements made in – the reports. (Dkt. #5, Ex. B.)  Exhibits B2 and B3 directly conflict with each other. See Alspaugh v. McConnell, 643 F.3d 162, 168 (6th Cir. 2011) (regarding the problem of credibility of a witness in summary judgment proof).

changed his story to indicate that he "had to physically guide [Castro] back a couple of times." (Dkt. #5, Ex. B4.)  He claimed that Castro got so close to him that she could have easily disarmed him. Id.  He failed to mention that he charged at Castro, pointing his rifle at her, for the sole purpose of slapping the cameras out of her hands, as she repeatedly backed away from him.  This stands in stark contrast to Plaintiff's First Amended Complaint (Dkt. #4 at 5) and Defendant Salinas's own initial report that Castro complied with his commands. (Dkt. #5, Ex. B2.)

Please note that the offense report attached to Defendant's Exhibit B1 starts on the second page of that report, omitting the first page. (Dkt. #5, Ex. B1.)  Please note also that Defendant's Exhibit B2 indicates that Defendant Salinas's initial report date and time was February 20, 2018 at 21:41, wherein he stated that Castro **complied** with his orders to move back. (Dkt. #5, Ex. B2.)  Then, **after Castro filed the instant lawsuit** on April 23, 2018 at 11:26, Defendant Salinas changed his story to report that Castro did **not** comply. (Dkt. #5, Ex. B3.)  On March 19, 2018, his story changed to justify the TPC §38.15 interference charge for which Castro was arrested, which the Bexar County District Attorney's Office immediately dismissed for insufficient evidence. (Dkt. #5, Ex. B4); (Dkt. #4 at 6.)

Because the exhibits attached to Defendant's Motion were not referenced in Plaintiff's complaint, and they substantially contradict Plaintiff's allegations of Constitutional rights violations, Defendant's Motion is a Motion for Summary Judgment, not a motion to dismiss on the pleadings.  By attaching these exhibits, Defendant is **not** "merely assist[ing] the plaintiff in establishing the basis of the suit," but is instead impermissibly fighting over the facts. Contrast Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993).

Because Defendant Salinas's statements substantially contradict Plaintiff Castro's version of events, and he even contradicted himself over time, Plaintiff needs to be able to depose Defendant Salina, as well as the other affiants, and gather additional records to conclusively demonstrate Salinas's intent to violate Castro's Constitutional rights. Please note that Defendant's Exhibit B5 – footage Defendant claims is his body camera recording – does not support Defendant's version of events, and there is an audio glitch at about the time when Castro alleges that the other officer told Defendant Salinas to leave Castro alone, or "not worry about that." (Dkt. #4 at 3); accord (Dkt. #5, Def. Ex. C3 at time 9:24:40-25:07.) Plaintiff alleges in her complaint that the other officer's instruction to Defendant Salinas to not worry about Castro was audible from her position. See (Dkt. #4 at 3.) The do-not-worry statement is certainly audible in the other officer's video. (Dkt. #5, Def. Ex. C3.) That glitch in Defendant Salinas's body camera audio found in Defendant's Exhibit B5 needs to be addressed in discovery, as it goes to the heart of what Salinas knew under the totality of the circumstance. Plaintiff will be prejudiced if this Motion is decided without the benefit of discovery to flesh out the contradictions that go to the core of Defendant Salinas's intent to prevent Castro from filming, attempt to break her cameras, and intent to criminalize her after-the-fact, likely having realized he was subject to a §1983 Civil Rights lawsuit for his misconduct.

Plaintiff attempted to conference with Defendant's counsel on a docket control order on June 11, 2018, but defense counsel was unwilling to work on this case before his motion to dismiss was decided. (Plf. Ex. A.) Plaintiff prays that the Court give the parties time for discovery before considering a Motion for Summary Judgment. No discovery has been conducted.

**II. Plaintiff Objects to Defendant's Inadmissible Offense Reports and Other Hearsay.**

Defendant attaches exhibits to his motion that are not admissible. (Dkt. #5, Ex. B2, B3, B4, C4, C5, C7, C8.) Materials prepared for litigation are inadmissible hearsay under Federal Rule of Evidence 803(6), and FRE 803(8)(A)(ii) excludes a police officer's recorded statement if made in a criminal case by a police officer. Broadcast Music, Inc. v. Xanthas, Inc., 855 F.2d 233 (5th Cir. 1988); See United States v. Cain, 615 F.2d 380, 382 (5th Cir. 1980).  Defendant's Exhibits B2, B3, B4, C4, C5, C6, C7, and C8 are inadmissible statements made by a police officer for a criminal case. Plaintiff hereby objects to those exhibits.  She addresses those exhibits in this Response only to demonstrate that Defendant's Motion is not a true FRCP 12(b)(6) motion and to show that the exhibits are not trustworthy. FRE 803(8)(B).

Note that one of the exhibits – Defendant's Exhibit B3 was created **after this lawsuit was filed**, and the change noted in that report goes to the heart of this controversy: Did Plaintiff Castro comply with Defendant Salinas such that 1) Defendant Salinas's actions can only be explained by his intentional violation of Castro's First Amendment protected right to film the police, and 2) Defendant Salinas changed his story to criminalize Plaintiff Castro in anticipation of a civil rights lawsuit? Compare (Dkt. #5, Ex. B2) with (Dkt. #5, Ex. B3.)  These exhibits are not only inadmissible for the reasons cited above, but also because the exhibits indicate a lack of trustworthiness. FRE 803(6)(E) and 803(8)(B).

Plaintiff also objects to Defendant's Exhibit D, as it is essentially a legal conclusion on the part of the Olmos Park City Secretary of what local city code section might apply to this case. FRE 702.

### III. Plaintiff Joanna Castro had a Clearly Established Constitutional Right to Film Salinas and to be Free from an Arrest Not Based on Probable Cause.

Defendant asserts the defense of qualified immunity. (Dkt. #5 at 5.) He appears to apply that defense to the Fourth Amendment component of this lawsuit, and the First Amendment component only insofar as the retaliation claim. See (Dkt. #5 at 5-12.) Plaintiff Castro alleges that Defendant Salinas violated her Fourth Amendment protected rights to 1) be free from a probable causeless arrest when he falsely reported that she had interfered with his duties, and 2) be free from excessive force when he slapped, shoved, and threatened Castro with a rifle when she was simply compliant and subdued. (Dkt. #4 at 7-8.) Defendant does not appear to attack Plaintiff's claim against Salinas for the violation of her First Amendment protected right to film him when he ordered her to put her camera down and slapped her camera out of her hand. See (Dkt. #5 at 5, et seq.)

*Arrest Without Probable Cause:*

Regarding the probable causeless arrest, it is undisputed that Castro was arrested for the offense of interference. (Dkt. #5 at 10.) Our jurisprudence clearly established that an arrest must be based on probable cause long before February 20, 2018. Turner v. Lieutenant Driver, 848 F.3d 678, 694 (5th Cir. 2017). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." Id. (citation omitted). Turner involved an activist filming the police in a public place, and the Fifth Circuit concluded that the police did not have probable cause to arrest him for an offense under those circumstances. Id. Here,

9

similarly, no objectively reasonable officer would believe he had probable cause to arrest Plaintiff Castro based on the presumably true facts stated in her complaint, including:

1. Castro was holding cameras, and Defendant Salinas knew they were cameras, evidenced by his oral order for her to put her camera down,

2. Defendant Salinas did not at any point on February 20th indicate that he was confused about what Castro was holding in her hands, but evidenced his knowledge that she was holding a camera by ordering her to put the camera down,

3. Defendant Salinas did not arrest Castro on February 20th for interference, nor did he make any move to arrest her until long after February 20th,

4. The other officer on the scene explicitly told Salinas to not worry about Plaintiff Castro's camera/filming, and Salinas immediately left Castro after the other officer told him not to worry about her,

5. Defendant Salinas turned his back on Plaintiff Castro after slapping her cameras, evidencing that he did not view her as a threat (nor did the other officer view her as a threat by ignoring her and telling Salinas not to worry about her), and

6. Defendant Salinas attempted to improperly place Plaintiff in fear of being illegally framed for another charge when he was present for her arrest about a month after their first encounter, implying that he would falsely charge her with drug possession.

The additional facts that Defendant argues in his Motion are not found in Plaintiff's complaint, and should not be considered, including who made the determination to charge Castro with interfering in violation of Texas Penal Code §38.15(b).

The facts in the case at bar are the same as in Turner, as well as other First Amendment filming cases like Glik v. Cunniffe, 655 F.3d 78, 80 (1st Cir. 2011) (Glik was standing roughly 10 feet away from officers making arrest, as Glik filmed the officers). No objectively reasonable officer under the circumstances described in Plaintiff's First Amended Complaint would believe that Plaintiff Castro interfered with Defendant Salinas, or that an objectively reasonable officer would otherwise find probable cause for an arrest.

The fact that an arrest warrant was secured after-the-fact needs to be investigated through discovery. Now that Plaintiff has Defendant Salinas's affidavit for the arrest warrant, she hereby asserts that the warrant was secured by providing the magistrate false information, and without the false statements, there was no probable cause supporting that arrest warrant. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The following facts cited in Defendant's Exhibit C6 were false, without which there is no probable cause:

1. Paragraph 1 "with something in her hand." (Dkt. #5, Ex. C6 at 11.) Salinas **affirmatively knew** that she held a camera, as he orally ordered her to put the camera down. (Dkt. #4 at 3.)

2. Paragraph 1 omits the fact that Castro complied with Salinas's order to get back. (Dkt. #4 at 3, 5.)

3. Paragraph 2 indicates that Castro refused to comply with lawful commands, which is false. Compare (Dkt. #5, Ex. C6 at 11) with (Dkt. #4 at 3, 5.)

4. Paragraph 2 indicates that Salinas "guided" Castro when he actually slapped her and shoved her.

5. Paragraph 2 of Defendant's Exhibit C6 also indicates that Castro got very close to Salinas's

gun, but omits the fact that Salinas charged at Castro as she backed away from him. In other words, Salinas's own actions caused his gun to be close to Castro, not the other way around.

6. Paragraph 3 of Defendant's Exhibit C6 states that Castro shoved something into Salinas's face, when in reality Salinas knew exactly what Castro had in her hands, and she never shoved anything in Salinas's face.

7. Paragraph 3 indicates that Castro could have been holding a weapon, but Defendant Salinas **knew she held a camera and ordered her to put her camera down**.

8. Finally, Paragraph 4 of Defendant's Exhibit C6 indicates that the other officer yelled for Officer Salinas's assistance. No, he did not. The other officer told Salinas to not worry about Castro.

From soup-to-nuts, the affidavit provided to the magistrate was riddled with completely false statements. Without these false statements, the affidavit would essentially state that Joanna Castro was present near an arrest, which would fall far short of establishing probable cause for an arrest warrant for her. These false statements tainted the magistrate. Buehler v. City of Austin, 824 F.3d 548, 554-55 (5th Cir. 2016).

*Excessive Force & the First Amendment:*

Second, regarding the right to be free from excessive force, that right was clearly established long before February 20, 2018. See Graham v. Connor, 490 U.S. 386, 395-96 (1989). Courts consider whether an officer's actions are "objectively reasonable in light of the facts and circumstances confronting" the officer. Id. at 395. Would an officer, possessing the same information as Defendant Salinas, who knows the law, believe that Defendant Salinas's conduct was

lawful? See Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

Defendant Salinas knew that Plaintiff Castro was holding a camera – as evidenced by his order for her to put the camera down. (Dkt. #4 at 5.)  He slapped at her and rammed her for his expressed purpose of knocking the camera out of her hand. Id.  No objectively reasonable police officer would believe that ordering a person to put down their camera was lawful, knowing the Fifth Circuit holding in Turner.  No objectively reasonable police officer would believe that knocking a camera out of a filmer's hand was lawful in the Fifth Circuit after Turner was decided. Castro's Fourth and First Amendment claims are intertwined in that the same action that constituted excessive force on a compliant/subdued female by slapping and shoving her to stop her from filming simultaneously violated her First Amendment right to film.

Plaintiff objects to the insertion of extraneous facts into this 12(b)(6) motion in Dkt. #5 at 10-13.  Plaintiff asks for time to conduct discovery before the Court considers a Motion for Summary Judgment.  Plaintiff also objects to Defendant's arguments in pages 13-15 of his 12(b)(6) motion, as discovery is required to flesh out the retaliation.  Without discovery, Plaintiff **can** point to the suspicious timing of Defendant's choice to change his story from *Castro complied* to *Castro refused to comply* after this lawsuit was filed.  The conflicts between the facts in Plaintiff's live pleading and the facts the defendant argues in his Motion to Dismiss demonstrate that this will be a fact-intensive case, requiring time for adequate discovery. See Evans v. Technologies Applications & Serv., 80 F.3d 954, 961 (4th Cir. 1996).  A motion made under FRCP 12(b)(6) cannot be used to resolve factual issues or the merits of the case. See Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

13

## IV. Declaratory Judgment

This case involves alleged violations of fundamental Constitutional rights. No discovery has been conducted. Plaintiff asks that the Court decide this issue in a future Motion for Summary Judgment after discovery has been conducted. Id.

## PRAYER

Plaintiff prays that Defendant's Motion to Dismiss be denied, and for all other attendant relief.

>Respectfully Submitted,
>JOANNA CASTRO, PLAINTIFF
>
>By:
>/s/ Millie L. Thompson
>Millie L. Thompson
>Texas State Bar Number:  24067974
>*The Law Office of Millie L. Thompson*
>1411 West Ave., Ste. 100
>Austin, Texas 78701
>Telephone: (512) 293-5800
>Fax: (512) 682-8721
>Email: millieaustinlaw@gmail.com

## Notice of Electronic Filing

I, Millie Thompson, do hereby certify that on this the 15th day of July 2018, I have electronically submitted for filing, a true and correct copy of the above document in accordance with the Electronic Case Files System of the Western District of Texas.

>/s/  *Millie L. Thompson*
>Millie Thompson, Plaintiff's Attorney

**Certificate of Service**

I, Millie Thompson, do hereby certify that on this the 15th day of July 2018, a true and correct copy of this Plaintiff's Response in Opposition to Defendant's Motion to Dismiss was served opposing counsel as follows:

Adolfo Ruiz
Denton Navarro Rocha Bernal & Zech
A professional corporation
2517 N. Main Ave.
San Antonio, Texas 78212
Patrick Bernal
*Via email: adolfo.ruiz@rampage-sa.com and by electronic filing.*

                                        /s/ *Millie L. Thompson*
                                        Millie Thompson, Plaintiff's Attorney