IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JOANNA CASTRO,
*PLAINTIFF*

V.   Case No. 5:18-CV-312-DAE

ALBERT SALINAS, et al.
*DEFENDANTS*

### PLAINTIFF'S RESPONSE IN OPPOSITION
### TO DEFENDANTS' FEBRUARY 15, 2019, FRCP 12(b)(1)&(6) MOTION TO DISMISS

### Introduction

Plaintiff filed this civil rights lawsuit on April 6, 2018. (Dkt. #1.) This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, and the United States Constitution. Plaintiff timely filed her Second Amended Complaint joining Olmos Park Police Chief Rene Valenciano (hereinafter "Valenciano") in his individual capacity and the City of Olmos Park (hereinafter "Olmos Park") as defendants to the lawsuit on December 20, 2018. (Dkt. #17). Defendants Valenciano and Olmos Park have moved to dismiss Plaintiff's claims against them. (Dkt. #22). Plaintiff hereby incorporates the facts in her Second Amended Complaint herein by reference. (Dkt. #17).

### Standard of Review

Courts must liberally construe in favor of the plaintiff all facts in the complaint, which must be taken as true, when deciding a defendant's Motion to Dismiss under Rule 12(b)(6). Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). "To survive a

1

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1959 (2009). Facial plausibility exists when the pleaded facts allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Bowlby v. City of Aberdeen, Miss., 681 F.3d 215, 219 (5th Cir. 2012) (citation omitted).

## Brief Summary of the Pleaded Facts

On February 20, 2018, Plaintiff Castro went to Olmos Park, Texas to film the police. (Dkt. #17 at 5). Defendant Salinas prevented Plaintiff Castro from filming the police by charging at her, unconstitutionally ordering her to put down her camera, and knocking the camera out of her hand. Id. at 5-7. While Plaintiff Castro did nothing to interfere with Defendant Police Officer Salinas, was compliant, and obeyed his orders to "get back," Defendant Salinas shoved her with such force that he almost knocked her to the ground and he bruised her. Id.

Since filing the lawsuit, Plaintiff learned that Chief Valenciano had planned to arrest *any* activists associated with Jack Miller, beginning weeks before Salinas encountered Joanna Castro (stated differently, he planned to arrest them before there were facts upon which one could base a probable cause determination). (Dkt. #17 at 8.) Before February 16, 2018, Valenciano investigated Miller, and contacted a variety of law enforcement agencies about Miller. Id. Valenciano gave a PowerPoint presentation on the topic of these open carry activists, all before February 20, 2018. Id. Then, Valenciano ordered the arrests of open carry activists, including Plaintiff Castro. Id. at 9. Plaintiff Castro was arrested because of Valenciano's order and Defendant Salinas's false report of interference. Id. The charge was dismissed for insufficient evidence by the Bexar County District Attorney's Office. Id. at 7.

**Argument & Authorities**

**I. Plaintiff Joanna Castro had a Clearly Established Constitutional Right to Film Salinas and to be Free from an Arrest Not Based on Probable Cause.**

Defendant Valenciano asserts the defense of qualified immunity. (Dkt. #22 at 7.) Defendants claim that Castro has failed to allege a Constitutional rights violation. Id. Valenciano is sued in his individual capacity. (Dkt. #22 at 3.) A personal-capacity lawsuit seeks to impose liability on the individual government actor for actions he took under color of state law. Hafer v. Melo, 502 U.S. 21, 25 (1991). Castro must allege facts, taken as true, that "show that the official, acting under color of state law, caused the deprivation of a federal right." Id. (citation omitted). A government actor sued in his individual capacity may assert the defense of qualified immunity. Id. Castro must show a causal connection between Valenciano and the rights violation. Buck v. City of Albuquerque, 549 F.3d 1269, 1279-80 (10th Cir. 2008) ("The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.").

*Arrest Without Probable Cause & Right to Film the Police:*

"The right to be free from arrest without probable cause is a clearly established constitutional right." Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994). An arrest is constitutional if, and only if, "the facts and circumstances within [Defendants'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [Plaintiff] had committed or [was] committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964).

Valenciano, as chief of police of the City of Olmos Park, planned to arrest open carry activists, and then ordered the arrest of Castro pursuant to that plan. (Dkt. #17 at 3, 7, 8.) By making that order, Valenciano was personally involved in the rights deprivation. See Iqbal, 129 S.Ct. at

3

1948. Castro was arrested per Valenciano's order for the alleged offense of interference based on her filming the police on February 20, 2018. (Dkt. #22 at 7.)  Long before February 20, 2018, Valenciano and his troops were on notice that arresting someone without probable cause violates the Fourth Amendment, and that filming the police in public is protected by the First Amendment. Turner v. Lieutenant Driver, 848 F.3d 678, 694 (5th Cir. 2017).

Turner involved an activist filming the police in a public place, and the Fifth Circuit concluded that the police did not have probable cause to arrest him for an offense under those circumstances. Id.  The Fifth Circuit also explicitly held in Turner on February 16, 2017, that there is a clearly established Constitutional right to film the police: "We conclude that First Amendment principles, controlling authority, and persuasive precedent demonstrate that a First Amendment right to record the police does exist…" Id. at 688. Like in Turner, here, no objectively reasonable officer would believe he had probable cause to arrest Plaintiff Castro based on the presumptively true facts stated in her complaint, including:

1. In February 20, 2018, Castro was holding cameras, and Defendant Salinas knew they were cameras, evidenced by Salinas's oral order for her to put her camera down,

2. Defendant Salinas did not at any point on February 20th indicate that he was confused about what Castro was holding in her hands, but evidenced his knowledge that she was holding a camera by ordering her to put the camera down,

3. Defendant Salinas did not arrest Castro on February 20th for interference, nor did he make any move to arrest her until long after February 20th,

4. The other officer on the scene explicitly told Salinas to not worry about Plaintiff Castro's camera/filming, and Salinas immediately left Castro after the other officer told him not to worry about her,

4

5. Defendant Salinas turned his back on Plaintiff Castro after slapping her cameras, evidencing that he did not view her as a threat (nor did the other officer view her as a threat by ignoring her and telling Salinas not to worry about her),

6. Castro obeyed every command to move Salinas uttered on February 20, 2018,

7. Castro was a significant distance away from Jack Miller when he was arrested, and she complied with orders to move even further away from him,

8. Salinas did not detain or arrest Castro on February 20, 2018,

9. The charge of interference was based on an order of Valenciano, who had been planning on arresting anyone involved with Jack Miller's open carry activism,

10. Valenciano ordered Castro's arrest knowing she had not interfered with the officers on February 20, 2018 when Miller was arrested, and

11. Defendant Salinas attempted to improperly place Plaintiff in fear of being illegally framed for another charge when he was present for her arrest about a month after their first encounter, implying that he would falsely charge her with drug possession.

The facts in the case at bar are the same as in Turner, as well as other First Amendment police-filming cases like Glik v. Cunniffe, 655 F.3d 78, 80 (1st Cir. 2011) (Glik was standing roughly 10 feet away from officers making arrest, as Glik filmed the officers engaged in making an arrest).  First, the clearly established Constitutional right to be free from a probable causeless arrest had long existed, and the right to film police was deemed clearly established in this circuit a full year before Castro set out to film Salinas in Olmos Park on February 20, 2018. Second, on the facts pleaded here, no objectively reasonable officer would believe that Plaintiff Castro interfered with Defendant Salinas, nor would an objectively reasonable officer otherwise find probable cause for an arrest. Indeed, qualified immunity protects "all but the plainly incompetent or those who knowingly

violate the law." (Dkt. #22 at 7.) (citing Anderson). Only the plainly incompetent would believe that Castro did not have the right to film on February 20, 2018.

Consider the elements of interference in Texas Penal Code Sec. 38.15: An offense is committed if a person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with a peace officer while he is performing a duty or exercising his lawful authority. **It is a defense to the charge if the alleged interference is speech alone**. Tex. Penal Code Sec. 38.15(d). The presumptively true facts pleaded in Plaintiff's Second Amended Complaint show Castro engaged in nothing but speech, as "there is no fixed First Amendment line between the act of creating speech and the speech itself." Turner, 848 F.3d at 689 (citation omitted). No objectively reasonable officer, knowing the law set forth in Turner, would believe there was probable cause to have Castro arrested for interference when she simply filmed, at a distance, and obeyed Salinas's orders to "get back."

### *"Standing" Is Not an Issue:*

Defendants argue that Castro seeks relief for harm done to third parties. (Dkt. #22 at 6.) Nowhere in Castro's pleadings does she seek relief for harm done to anyone but herself. It is her own arrest, ordered by Valenciano, of which she complains. (Dkt. #17 at 8). Valenciano's primary interest may have been Jack Miller, but this lawsuit is about what Salinas and Valenciano did to Castro. Valenciano's broader plan against Miller, however, becomes important in addressing Monell liability.

### II. Monell Liability

Liability attaches to a municipality when the municipality causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell v. Dep't of Soc. Serv. Of N.Y., 436 U.S. 658, 694 (1978). An official policy may be evidenced by custom rather than that

which is written if it is "[…] a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy…" Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). Further, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986). "[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." Id. at 481.

Plaintiff has alleged the following facts to support her argument that her probable causeless arrest was pursuant to Olmos Park policy:

1. Valenciano, as chief of police, planned to arrest open carry activists before any had actually been arrested (and, therefore, before any facts existed to believe there was probable cause to arrest them for any offense). (Dkt. #17 at 8).
2. He investigated the open carry activist Jack Miller before Miller was arrested in Olmos Park. Id.
3. He contacted a variety of law enforcement entities about the open carry activists. Id.
4. He created a PowerPoint presentation about the activists to show to other police chiefs. Id.
5. He instructed the officers under his command to pretend not to know that Jack Miller and the activists had activist-intentions. Id.
6. After February 20, 2018, knowing that Castro had not committed a crime, Valenciano ordered charges be leveled against Castro because she had engaged in activism in Olmos Park with Jack Miller. (Dkt. #17 at 9).
7. Valenciano ordered the arrest of other open carry activists on March 27, 2018. Id.

    8. The City of Olmos Park adopted Valenciano's anti-filming stance when city officials threatened to have people arrested for filming a city council meeting wherein open carry was addressed. Id.[1]

In sum, Valenciano set out to criminalize activists in 2018, then he ordered activists arrested on several occasions, and Valenciano's plan was adopted in city council meetings, wherein people were threatened with arrest for exercising their right to film the open meeting. This was not a lone-incident by a sole municipal actor, nor is Castro seeking to hold Olmos Park liable via *respondeat superior*. The Chief of Police for Olmos Park planned, arranged, and executed a plan to arrest activists, including Castro. Olmos Park adopted their Police Chief's plan, as evidenced by threats of arrests for filming in council meetings.

    Indeed, plaintiffs cannot rely on random or isolated incidents to prove a policy or custom; instead, "a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force" must be shown. Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992). That said, the Supreme Court has rejected a heightened pleading standard for a plaintiff to survive dismissal of a Monell claim. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993). Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Here, because Plaintiff has pleaded facts establishing Olmos Park's pattern of arresting activists in 2018 pursuant to Valenciano's plan, the Defendants' Motion to Dismiss on this ground should be denied.

---

[1] Texas requires municipalities to permit people to record open meetings. Tex. Gov't Code Sec. 551.023(a) ("a person in attendance may record all or any part of an open meeting …").

### III. Declaratory Judgment

The Declaratory Judgment Act "operates procedurally to broaden the class of litigants who might bring into federal court causes of action arising under federal law." Lowe v. Ingalls Shipbuilding, a Division of Litton Systems, Inc., 723 F.2d 1173, 1179 (5th Cir. 1984). Civil rights cases arise under federal law. 42 U.S.C. §1983. Courts apply the following three-step analysis when deciding whether to dismiss or retain a declaratory judgment action: "(1) whether the declaratory action is justiciable, [..]; (2) if it has jurisdiction, whether the court has the authority to grant declaratory relief in the present action, and (3) if it has jurisdiction and authority, whether to exercise its broad discretion to decide or dismiss the action." The Sherwin Williams Co. v. Holmes County, 343 F.3d 383, 387 (5th Cir. 2003). Regarding the first step, this is a §1983 Civil Rights Action, over which the Court has jurisdiction.

Should the Court, at any stage in the litigation, rule in favor of Defendants on the issue of qualified immunity, Plaintiff will request a declaration that her arrest was unconstitutional so that henceforth law enforcement is on-notice that arresting people under these circumstances is unconstitutional. See Turner v. Lieutenant Driver, 848 F.3d 678, 687-88 (5th Cir. 2017) (having ruled against the civil rights plaintiff on whether he had a clearly established right, the court nevertheless proceeded: "Because the issue continues to arise in the qualified immunity context, **we now proceed to determine it for the future**."). This Court should retain jurisdiction over the declaratory judgment action.

### PRAYER

Plaintiff prays that Defendant's Motion to Dismiss be denied, and for all other attendant relief.

Respectfully Submitted,

JOANNA CASTRO, PLAINTIFF

By:
/s/ Millie L. Thompson
Millie L. Thompson
Texas State Bar Number:  24067974
*The Law Office of Millie L. Thompson*
1411 West Ave., Ste. 100
Austin, Texas 78701
Telephone: (512) 293-5800
Fax: (512) 682-8721
Email: millieaustinlaw@gmail.com

### Notice of Electronic Filing

I, Millie Thompson, do hereby certify that on this the 15th day of March 2019, I have electronically submitted for filing, a true and correct copy of the above document in accordance with the Electronic Case Files System of the Western District of Texas.

/s/  Millie L. Thompson
Millie Thompson, Plaintiff's Attorney

### Certificate of Service

I, Millie Thompson, do hereby certify that on this the 15th day of March 2019, a true and correct copy of this Plaintiff's Response in Opposition to Defendant's 2/15/2019 Motion to Dismiss was served opposing counsel as follows:

Adolfo Ruiz
Denton Navarro Rocha Bernal & Zech
A professional corporation
2517 N. Main Ave.
San Antonio, Texas 78212
Patrick Bernal
*Via email:* adolfo.ruiz@rampage-sa.com *and by electronic filing.*

/s/  Millie L. Thompson
Millie Thompson, Plaintiff's Attorney