# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

JOANNA CASTRO,

        Plaintiff,

v.

ALBERT SALINAS,

        Defendant.

No. 5:18-cv-00312-JKP-ESC

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Alejandro[1] Salinas's ("Salinas") Motion For Summary Judgment (ECF No. 39) to which Plaintiff Joanna Castro ("Castro") responded (ECF No. 43) and Salinas replied (ECF No. 44). After due consideration, the Court grants the motion.

## BACKGROUND

Castro's operative complaint alleges claims against Salinas pursuant to 42 U.S.C. § 1983. The events underlying this civil rights action are described in the Court's prior orders, in particular the order of June 4, 2019, in which the Honorable David Alan Ezra dismissed Castro's claims against Olmos Park Chief of Police Rene Valenciano and the City of Olmos Park. ECF No. 32. In short, the events concern a police encounter with Jack Miller ("Miller"), a Second Amendment activist, which Castro recorded and live-streamed. Castro's claims against Salinas for excessive force, retaliation, and common law assault are the subject of this motion for summary judgment.

---

[1] Castro's Second Amended Complaint notes she misnamed Defendant Salinas in her Original Complaint as "Albert Salinas." Castro states that a conversation with the Olmos Park Police Department confirmed Officer Salinas's first name is Alejandro. ECF No. 17 ¶ 3.

**LEGAL STANDARD**

The Court will grant summary judgment if the record shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48. There is no genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and designate competent summary judgment evidence "showing that there is a genuine [dispute] for trial." *Adams*, 465 F.3d at 164; *Matsushita*, 475 U.S. at 585–87. The parties may satisfy their respective burdens by "tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992); *accord* Fed. R. Civ. P. 56(c).

When ruling on a motion for summary judgment, the Court must view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, *Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods.*, *Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55. However, at summary judgment, a court may assign greater weight to "facts evident from the video recordings taken at the scene." *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)). When the nonmoving party fails "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music*, *Inc. v. Bentley*, No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017). Furthermore, the courts have "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

When the movant asserts a qualified immunity defense, that assertion "alters the usual summary judgment burden of proof." *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010). In the context of summary judgment, governmental employees need only assert the defense in good faith. *See Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). They have no burden "to put forth evidence to meet [their] summary judgment burden for a claim of immunity." *Beck v. Tex. State Bd. of Dental Examiners*, 204 F.3d 629, 633-34 (5th Cir. 2000). Once a governmental

employee "invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

## DISCUSSION

Castro does not assert an independent constitutional claim under the Fourteenth Amendment. The operative complaint alleges the defendants deprived Castro of her "First, Fourth, and Fourteenth Amendment rights under the United States Constitution." ECF No. 17 at 2. This is the only reference to the Fourteenth Amendment in the operative complaint. Castro appears to clarify this reference in her response to the motion for summary judgment stating, the "First Amendment is made applicable to the States via the Fourteenth Amendment." ECF No. 43 at 3. Thus, to the extent Castro "asserts the Fourteenth Amendment for the unremarkable proposition that [constitutional] protections apply to state actors by virtue of the Fourteenth Amendment, the Fourteenth Amendment claims survive summary judgment where the underlying [constitutional] claims do." *Perry v. City of Bossier*, No. 17-0583, 2018 WL 5074674, at \*4 (W.D. La. Oct. 17, 2018) (citing *Shaboon v. Duncan*, 252 F.3d 722, 733 (5th Cir. 2001)). To the extent that any Fourteenth Amendment claim purports to be a substantive due process claim, it is dismissed. "[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Accordingly, in the analyses below, the Court properly considers the alleged constitutional violations under the more specific right implicated by the allegations.

To state a federal civil rights claim, a plaintiff must allege a specific defendant, while acting under color of state law, deprived her of a right guaranteed under the Constitution or a

federal statute. *See West v. Atkins*, 487 U.S. 42, 48 (1988). "A person acts under color of state law if he misuses power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Bustos v. Martini Club*, 599 F.3d 458, 464 (5th Cir. 2010) (quoting *West*, 487 U.S. at 49) (internal quotations omitted). The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (*en banc*) (quoting *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016)).

"A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). *See also Melton*, 875 F.3d at 261 (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (*en banc*) ("To satisfy this burden and overcome qualified immunity, the plaintiff must satisfy a two-prong test. First, the plaintiff must show 'that the official violated a statutory or constitutional right.' Second, the plaintiff must show that the right was 'clearly established' at the time of the challenged conduct.") (internal citations omitted).

Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because Castro does not show Salinas violated any constitutional right, this case is resolved at the first prong.

**1. Excessive Force**

Though Castro purports to bring her claim under both the Fourth and Fourteenth Amendments, under Supreme Court precedent, an allegation that law enforcement officers used excessive force is analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "To bring a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that she was seized." *Flores v. Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). She must then show she "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force was objectively unreasonable." *Id*.

Castro's claim of excessive force fails because the undisputed evidence shows no more than a *de minimis* injury. Therefore, there is no need to determine whether Castro was seized or whether Salinas used force that was necessary or reasonable under the circumstances. A plaintiff asserting an excessive force claim must demonstrate an injury that resulted directly and only from the use of force that was excessive to the need. *Id*. "The injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed." *Lincoln v. Turner*, 874 F.3d 833, 846 (5th Cir. 2017) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)). "[P]sychological injuries may sustain a Fourth Amendment claim." *Id*. (citing *Dunn v. Denk*, 79 F.3d 401, 402 (5th Cir. 1996) (*en banc*)).

Salinas contends Castro cannot establish more than a *de minimis* injury. In support of his contention, he points to Castro's deposition, in which she testified she received a bruise to her left breast as a result of Salinas pushing her. Castro also testified she did not inform the officers at the scene that she was injured, did not receive any treatment for the bruise, the bruise was tender for about a week, and she did not seek medical attention. Ex. D at 71:4-72:7. Salinas further contends Castro cannot establish psychological injuries sufficient to sustain her excessive

force claim. Salinas points to Castro's deposition, in which she testified she did not see a physician or counselor nor was she prescribed any medication to treat her alleged psychological injury. Ex. D at 72:8-76:10.

Castro alleges she was filming Miller from approximately twenty-five feet away when Salinas exited his vehicle carrying a rifle. ECF No. 17 ¶ 8. After initially shouting at Miller and pointing the rifle at him, Salinas noticed Castro was filming and turned his attention to her. *Id.* ¶ 9. Castro backed away as Salinas yelled at her to stop, put her camera down, and back away. *Id.* ¶ 10. Officer Schumacher told Salinas to not worry about Castro. *Id.* ¶ 10. Salinas approached Castro and "shoved" her, striking her left breast. *Id.* ¶ 11. Castro stumbled and nearly fell to the ground. *Id.* Salinas then slapped Castro, knocking the camera out of her hand. *Id.* ¶ 12.

In response to the motion for summary judgment, Castro points to her affidavit in which she attests she continued to have an emotional response, "thinking that Salinas could have shot me when he had his rifle pointed at me on February 20th, or planted something on me when he arrested me in March." ECF Nos. 43 at 8; 43-1 ¶ 20. Castro cites *Flores* in support of her argument that "psychological injuries can be sufficient" to establish injury, and *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) in support of her argument that "significant physical injuries are not required for an excessive force claim." ECF No. 43 at 8.

In *Tarver*, "acute contusions of the wrist," without more, did not evidence more than *de minimis* injury. 410 F.3d at 751. "[N]umerous abrasions and bruises, bloody urine, high blood pressure, and increased heart rate" noted by hospital staff does not evidence more than *de minimis* injury. *Westfall v. Luna*, 903 F.3d 534, 541, 550 (5th Cir. 2018). A sore, bruised ear that lasted three days and did not require medical care is merely a *de minimis* injury. *Siglar v. Hightower*, 112 F.3d 191, 192 (5th Cir. 1997). An allegation of an increase in PTSD symptoms

that was not supported with medical evidence is insufficient to survive summary judgment. *Brooks v. City of W. Point*, 639 F. App'x 986, 990 (5th Cir. 2016). A plaintiff's attestation that after an incident with police in which a taser barb lodged in his genitals, he suffered "symptoms of depression, crying episodes, increased sleep, feeling punished, decreased libido, and loss of energy, enjoyment of life, confidence and appetite . . . and erectile disfunction," presented evidence of injuries that were more than *de minimis*. *Casto v. Plaisance*, No. 15-817, 2016 WL 2855468, at *6 (E.D. La. May 16, 2016).

The dashcam, body camera, and personal video recordings of the encounter generally confirm Castro's version of the encounter between herself and Salinas. Specifically, Salinas pointed his rifle at Castro, pushed and slapped her, and knocked a video recording device from her hand. *See* Exs. B-5, C-3, D-7, D-8. However, Castro does not point the Court to evidence of a physical or psychological injury that is more than *de minimis*. Castro's evidence of injury includes her deposition testimony that her left breast was contused and sore for a week and she suffered sleeplessness and fear of police officers; and her attestation that several months after her encounter with Salinas and her arrest, she continued to have an emotional response when she thought about the events. Ex. D 72:23-75:24; ECF No. 43-1 ¶ 20. Accordingly, Castro has not shown more than a *de minimis* injury with respect to her encounter with Salinas and her subsequent arrest, and the Court grants the motion for summary judgment as to the excessive force claim.

**2. Retaliation**

The First Amendment protects the right to record the police, subject to reasonable time, place, and manner restrictions. *Turner v. Driver*, 848 F.3d 678, 688 (5th Cir. 2017). "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual

to retaliatory actions" for engaging in "constitutionally protected speech." *Hartman* v. *Moore*, 547 U.S. 250, 256 (2006). "If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citation omitted).

In general, a plaintiff bringing a First Amendment retaliation claim must establish she was engaged in a constitutionally protected activity, the defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and but-for causation. *Id.* A First Amendment retaliatory arrest claim requires a plaintiff plead and prove the absence of probable cause, unless "plaintiff presents objective evidence that [s]he was arrested [and that] otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Roy v. City of Monroe*, 950 F.3d 245, 255 n.4 (5th Cir. 2020) (alteration in original) (quoting *Nieves*, 139 S. Ct. at 1727).

It is undisputed that Castro was engaged in constitutionally protected activity (filming Miller's encounter with police) and she suffered an injury that would chill a person of ordinary firmness from continuing to engage in that activity (an arrest). The parties dispute whether there was probable cause to arrest Castro. *See* ECF Nos. 39 at 17; 43 at 5-8.

Castro argues the facts in this case do not support probable cause to arrest based on Texas Penal Code § 38.15 and *Carney v. State*, 31 S.W.3d 392 (Tex. App.—Austin 2000, *no pet.*). ECF No. 43 at 5-6. Castro further contends *Nieves* creates an exception to the general requirement that the plaintiff in a retaliation case prove a lack of probable cause for arrest, because "a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 7 (quoting *Nieves*, 139 S. Ct. at 1727).

With respect to this exception she argues: "Salinas did not arrest Joanna Castro on February 20, 2018, showing the discretionary nature of the charge." *Id*. at 7-8. *Nieves* requires more. To proceed under the rule expressed in *Nieves*, a plaintiff must present "objective evidence that [s]he was arrested and 'otherwise similarly situated individuals not engaged in the same sort of protected speech' [were not arrested]." *Nieves*, 139 S. Ct. at 1727. In other words, Castro must first present objective evidence that Olmos Park police officers routinely do not arrest persons for the misdemeanor offense of interference with public duties, but she was arrested for that offense.[2] Castro does not point to such evidence.

When reviewing an arrest, courts must ask "whether the circumstances, viewed objectively, justify the challenged action, and if so, conclude that action was reasonable *whatever* the subjective intent motivating the relevant officials. A particular officer's state of mind is simply irrelevant, and it provides no basis for invalidating an arrest." *Id*. at 1725 (emphasis in original, internal citations and quotation marks omitted). Here, Castro was arrested pursuant to an arrest warrant issued by a magistrate. Exhibit C-6. The warrant to arrest Castro was issued pursuant to the affidavit of Sgt. Ruiz, which was supported by a statement of facts provided by Salinas. *Id*. Castro does not allege the arrest warrant was facially invalid or that it was obtained by fraud or misrepresentation. She argues there was no probable cause to arrest her.

"A person commits [the offense of interference with public duties] if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." Tex. Penal Code § 38.15(a)(1). It is a defense that the interruption, disruption, impediment, or

---

[2] "For example, at many intersections, jaywalking is endemic but rarely results in arrest. If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest." *Nieves*, 139 S. Ct. at 1727.

interference alleged consisted of speech only. *Id.* § 38.15(d). While the First Amendment protects the right to record police, physically disobeying a police officer's instruction may be sufficient to establish probable cause for arrest under § 38.15. *See Turner*, 848 F.3d at 690; *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017) (collecting cases).

The Court notes that part of the statement of facts presented to the magistrate does not fairly represent the facts. In this statement of facts, Salinas states:

> "In order to get 'Suspect' out of the vicinity of danger and for her not [to] be interfering with Officer Salinas and Officer B. Schumacher, the officer had to physically guide 'Suspect' back a couple of times. The 'Suspect' came very close to the side of his handgun, that 'Suspect' was approximately less than a foot away where 'Suspect' could have easily reached over in an attempt to take it."

Ex. C-6. The video evidence is unequivocal that Salinas did not "guide" Castro back. Salinas pushed and slapped Castro. The video evidence also shows it is Salinas's movement that placed Castro within reach of his gun. Castro began stepping back as Salinas approached her. After several steps, Castro stopped her backward movement and Salinas closed the gap between them. *See* Exs. B-5 00:00-00:45; C-3 at 01:18-01:44; D-7 at 00:23-00:29; D-8 at 13:45-13:51.

However, the video evidence also confirms a critical element in the statement of facts, which is relevant to probable cause. Specifically, Castro did not follow Salinas's commands. *See* Ex. C-6. The video evidence shows Miller twice yelling to Castro to get back after Salinas told her several times to get back. Ex. D-7 00:23-00:29. Because Castro's failure to comply with Salinas's instructions can constitute interference, the magistrate's finding of probable cause is reasonable. Because there was probable cause to arrest Castro, her retaliatory arrest claim fails as a matter of law. Accordingly, the Court grants the motion for summary judgment as to the retaliation claim.

### 3. Common Law Assault

Salinas argues and Castro does not dispute the claim for common law assault must be dismissed pursuant to Tex. Civ. Prac. & Rem. Code § 101.106(f).

"Texas law protects governmental entities from suit through sovereign immunity, unless the area of liability is specifically waived by the Texas Tort Claims Act, such as injury by an employee's motor vehicle, injury caused by property conditions, and claims arising from defects in premises." *Calhoun v. Villa*, 761 F. App'x 297, 300 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 326 (2019) (citing Tex. Civ. Prac. & Rem. Code § 101 *et seq.*) Castro's claim does not fall under these categories.

"If a suit is filed . . . against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."[3] *Id.* § 101.106(e). A government employee sued individually may be dismissed upon his motion or by plaintiff's amended pleading substituting the governmental unit as defendant. *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 358 (Tex. 2013). "On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed." Tex. Civ. Prac. & Rem. Code § 101.106(f).

It is undisputed that Salinas was acting within the scope of his employment with a governmental unit. Salinas's motion for summary judgment moves for dismissal of Castro's state-law tort claim pursuant to § 101.106(f). Castro did not file an amended pleading dismissing

---

[3] Section 101.106 applies to both state and municipal governmental units. *Calhoun*, 761 F. App'x at 300 (affirming dismissal of state law claims brought against the City of Houston and six of its police officers).

Salinas and naming the governmental unit as defendant.[4] Accordingly, Castro's state-law claim for assault against Salinas is dismissed.

**4. Declaratory Relief**

Because Castro has asserted no claim against Salinas that survives summary judgment, she has no basis to obtain declaratory relief. Furthermore, on June 4, 2019, Judge Ezra dismissed Castro's claims for declaratory relief against Olmos Park Chief of Police Rene Valenciano and the City of Olmos Park. Although that dismissal occurred in the context of a motion to dismiss, the reasons set forth in Judge Ezra's Order apply equally here. *See* ECF No. 32. Accordingly, the Court must deny Castro's request for declaratory relief.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant Alejandro Salinas's Motion for Summary Judgment (ECF No. 39). This ruling disposes of all claims asserted in the operative complaint against Defendant Salinas. Because all other claims in this action were previously dismissed, the Court issues a final judgment pursuant to Fed. R. Civ. P. 58 contemporaneously with this Memorandum Opinion and Order.

It is so ORDERED this 19th day of June 2020.

_____

JASON PULLIAM
UNITED STATES DISTRICT JUDGE

---

[4] The City of Olmos Park was dismissed as a defendant on June 4, 2019. *See* ECF No. 32.